UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HERBERT D. EASH, III,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

                Defendant.

No. CASE NO. C08-5583RBL

REPORT AND RECOMMENDATION

Noted for July 10, 2009

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administration's decision.

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiff was born in 1970. He has a high school diploma, some college education and past work experience as a restaurant manager, a server, an applications tester, a Lotus Notes administrator, a website developer, a store merchandise assembler, and a customer service clerk.

REPORT AND RECOMMENDATION - 1

Plaintiff served as a tank commander for six months in the Persian Gulf in 1993. Plaintiff alleges that he suffers from Post Traumatic Stress Disorder ("PTSD") and that he has been unable to hold a job or complete a college degree due to problems with concentration, forgetfulness, anger, erratic behavior, repeated conflicts with others, physical symptoms (gastrointenstinal problems, irritable bowel syndrome, joint pain, and headaches), and inability to handle stress.

On August 13, 2003, plaintiff filed an application for disability insurance benefits, alleging disability as of June 5, 2002. Tr. 12, 25, 53-55, 68. His application was denied initially and on reconsideration. Tr. 12, 25-27, 36. A hearing was held before an administrative law judge ("ALJ") on October 20, 2005. Tr. 422-73.

On May 25, 2006, the ALJ issued a decision, determining that plaintiff was not disabled. Plaintiff's request for review was denied by the Appeals Council on September 30, 2006, making the ALJ's decision the Commissioner's final decision. On November 27, 2006, plaintiff filed a complaint in this Court seeking review of the ALJ's decision.

The matter was referred to the Honorable Karen L. Strombom, who reviewed the ALJ's decision and remanded the matter to the administration for further consideration. Judge Strombom found the ALJ made three specific errors. First, the court found the ALJ's review of the VA disability record fell short of the type of persuasive, valid and specific reasons required by McCartey v. Massanari, 298 F.3d 1072 (9th Cir. 2002). Second, Judge Strombom reviewed Plaintiff's argument that the ALJ failed to properly consider the medical evidence. With the exception of the opinions from Dr. Monkarsh, Dr. Houck, and Dr. Lewis, Judge Strombom concluded that the medical evidence and opinions were properly considered by the ALJ. Judge Strombom also found the ALJ did not properly address the lay witness statements from Plaintiff's mother and wife. Finally, Judge Strombom concluded that due to the errors the ALJ

made in evaluating the VA's rating decision, the findings and opinions of Drs. Monkarsh, Houck and Lewis, and the lay evidence in the record, it was improper for the ALJ to rely on the residual functional capacity with which she assessed Plaintiff. On October 12, 2007, the Honorable Robert J. Bryan adopted the recommendation, and the matter was remanded to the administration to cure the errors noted by Judge Strombom.

The matter is now back before the court to review the ALJ's most recent decision, dated May 30, 2008. Tr. 477- 489. Plaintiff challenges the ALJ's decision to deny his application for social security benefits, and he argues many of the same errors previously raised before Judge Strombom. Specifically, Plaintiff raises the following five claims:

(a) the ALJ erred by failing to give great weight to the disability "Rating Decision" for plaintiff issued by the United States Department of Veterans Affairs ("VA");

(b) the ALJ erred in evaluating the lay witness evidence in the record;

(c) the ALJ erred in evaluating the medical opinion evidence -- the opinions of Drs. Monkarsh, Houck, Lewis, and Turco;

(d) the ALJ erred in assessing plaintiff's residual functional capacity; and

(e) the ALJ did not meet her burden at step-five because the residual functional capacity finding and hypothetical question to the VE did not accurately reflect Plaintiff's limitations.

**DISCUSSION**

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Richardson v. Perales, 402 U.S. 389, 201 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. Id.

Plaintiff bears the burden of proving that he or she is disabled within the meaning of the Social Security Act (the "Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment that has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

### *I.  The ALJ Properly Addressed The VA's Disability Determination*

Although a determination by the VA about whether a claimant is disabled is not binding on the Social Security Administration ("SSA"), an ALJ must consider that determination in reaching his or her decision. McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002); 20 C.F.R. § 404.1504. Further, the ALJ "must ordinarily give great weight to a VA determination of disability." McCartey, 298 F.3d at 1076. This is because of "the marked similarity" between the two federal disability programs:

> Both programs serve the same governmental purpose--providing benefits to those unable to work because of a serious disability. Both programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims. . . . Both programs have a detailed regulatory scheme that promotes consistency in adjudication of claims. Both are administered by the federal government, and they share a common incentive to weed out meritless claims. The VA criteria for evaluating disability are very specific and translate easily into SSA's disability framework.

Id. However, "[b]ecause the VA and SSA criteria for determining disability are not identical," the ALJ "may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." Id. (*citing* Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001).

As noted above, Judge Strombom previously found the ALJ had not assigned great weight to the VA disability determination and did not provide "persuasive, specific, valid reasons" for not doing so "that are supported by the record." On remand the ALJ reconsidered the VA disability determination, and wrote the following:

> The VA rated the claimant 30 percent disabled in September 1998, and 70 percent disabled in January 2001 due to PTSD (Exhibit 4F/156). On February 14, 2003, the VA awarded the claimant payments of $2,440 per month due to unemployability (Exhibit 4F/153). While it is true that the claimant has a 100% disability rating from the VA for his impairments (Exhibit 4F/153-156), their unique disability determination process does not adequately address the factors required for disability under the Social Security Administration's regulations, <u>including the vocational questions whether claimant is able to do past jobs or other jobs that exist in significant numbers in the U.S. In addition, the VA decisions did not consider the claimant's credibility issues, noncompliance with treatment, activities of daily living or documented improvement within one year of treatment. All of those factors weigh against the decision reached by the VA.</u> Accordingly, the VA's disability rating has been considered, but not given controlling weight because it is not entitled to such.

Tr. 487-88 (emphasis added). When compared to the earlier decision, which was found to be deficient, the ALJ's decision now includes several reasons (the underlined portion of the above

REPORT AND RECOMMENDATION - 5

quote) why the VA disability determination was not given great weight. Plaintiff argues the ALJ's reasons are not legitimate and not supported by the record. However, after reviewing the matter, the undersigned does not find any merit in Plaintiff's argument.

The ALJ provided five separate and distinct reasons, noted above, for not adopting or giving the VA disability determination great weight. First, the ALJ relied on the fact that the VA did not have the benefit of the vocational expert who testified that someone with Plaintiff's residual functional capacity would be capable of performing returning to his past job as a computer program analyst. Tr. 659-63. The ALJ next noted Plaintiff's credibility as a factor that does not support a finding of disability or the VA's conclusion. The ALJ further stated that Plaintiff's noncompliance with treatment, daily activities, and medical improvement did not support a giving deference to the VA's disability determination.

The ALJ elaborated in the body of her decision. For example, with regard to Plaintiff's credibility, the ALJ wrote:

> A review of the claimant's work history shows that (with the exception of his military service) the claimant worked sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments, as opposed to a lack of motivation to work. Dr. Swiercinsky observed that the claimant had never "established himself in the world of work and independence" after high school 9Exhibit 3F). Moreover, according to Dr. Wittkopp's review of the medical evidence, Dr. Matteucci had noted on July 16, 2002, that the claimant appeared to be focused on obtaining 100% VA disability, and primarily seeking to continue his leave of absence from work (Exhibit 2F/34). After a follow-up examination on August 18, 2003, Dr. Matteucci noted that the claimant appeared to have decided that because he was not receiving benefits for a 100% VA disability rating that he "[saw] less need to explore return to work options …" (Exhibit 4F/128). Dr. Wittkopp echoed these observations in his July 2003 evaluations of the claimant. He reported that the claimant had in fact said he was earning more money (in disability benefits) than he had earned at his restaurant job, and that he "enjoy[ed] the fact that it allow[ed] him the freedom to do some things such as go to school – even though … this schooling [would] lead to no productive

REPORT AND RECOMMENDATION - 6

employment" (Exhibit 2F/22). These comments, from treating sources, are telling and they hurt claimant's credibility.

Tr. 483.

The ALJ also addressed the medical evidence and noted inconsistencies with the VA's treatment records. The ALJ stated that he gave a "fair amount of weight" to the opinion of Dr. Mattuecci, whose opinion the ALJ found to be consistent with Plaintiff's conservative treatment and activities of daily living. The ALJ further explained:

> Some weight was given to Dr. Swiercinsky, who offered no opinion on June 27, 2003, regarding the claimant's GAF as 60, but he was vague about this. He indicated this "denotes serious impairments in most life spheres, including vocational and interpersonal activates" (Exhibit 2F/16). This is inconsistent because a GAF of 60 is generally used to denote a moderate (but not disabling level of) impairment in social or occupational functioning. In addition, he opined that the claimant was "totally disabled at this time and for the foreseeable future" (Exhibit 2F/17). This opinion is inconsistent with the VA treatment records, as well as Dr. Swiercinsky's findings from June 27, 2003. Dr. Wittkopp's opinion is not objective and appears to be based on subjective complaints. Since the claimant is not very credible, reliance on his allegations is not persuasive. It is also noted that Dr. Wittkopp indicated that some of the claimant's reported history was "outright prevarication" (Exhibit 2F/22). It is curious that he did not take this into account in offering an opinion regarding whether the claimant is disabled. Credibility is generally a factor considered in the area of psychological problems. Dr. Wittkopp's reports, thus, are ambiguous and difficult to interpret. His failure to address the claimant's credibility issues and noncompliance with treatment renders his opinion regarding total disability unreliable and unpersuasive.

Tr. 486.

In sum, after reviewing the ALJ's decision, the undersigned finds the ALJ properly addressed the VA's disability determination. The ALJ relied upon persuasive, specific, valid reasons for not giving the VA's disability determination great weight, including the testimony of the vocational expert, Plaintiff's credibility, noncompliance with treatment, activities of daily living and improvement in his medical condition.

### II. The ALJ Properly Considered the Lay Witness Evidence in the Record

REPORT AND RECOMMENDATION - 7

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). An ALJ may discount lay testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512.

Plaintiff argues that the ALJ erroneously rejected the statements and observations of his wife, Graciella Eash, and his mother, Brenda Ferry, for the same reasons the ALJ rejected Plaintiff's testimony.

Plaintiff does not directly argue the ALJ erred in her assessment of Plaintiff's credibility. The undersigned notes Plaintiff indirectly argued the issue of Plaintiff's credibility when he argued the ALJ's reasons for discounting the VA disability determination were invalid, as discussed above. The court further notes that credibility determinations are particularly within the province of the ALJ, Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995), and after reviewing the matter the court finds no error in the ALJ's assessment of Plaintiff's credibility. Accordingly, the same reasons for rejecting Plaintiff's allegations of total disability were properly relied upon by the ALJ to discredit the law witness evidence.

### III.  *The ALJ's Evaluation of the Opinions of Dr. Monkarsh, Dr. Houck, Dr. Lewis, and Dr. Turco*

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where

REPORT AND RECOMMENDATION - 8

the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (*citation omitted)*. The ALJ must only explain why "significant probative evidence has been rejected." Id.; *see also* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining

REPORT AND RECOMMENDATION - 9

physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

### A.     Dr. Monkarsh

Plaintiff was evaluated by Gary P. Monkarsh, Ph.D., in late September, 2002.  Tr. 218. Dr. Monkarsh diagnosed plaintiff with "chronic and severe" PTSD, and noted specifically that he appeared to suffer from an increase in his PTSD symptoms. Id.  He also diagnosed plaintiff with a dysthymic disorder secondary to his PTSD, and assessed him with a GAF score of 45-50. Id. Finally, Dr. Monkarsh opined that plaintiff appeared to "suffer from severe overall emotional and industrial impairment and moderate to severe social impairment" as a result of his diagnosed conditions and symptoms. Id.  When Judge Strombom remanded the matter, she directed the ALJ to consider the opinion of Dr. Monkarsh.   Plaintiff argues the ALJ addressed the opinion evidence, but failed to provide clear and convincing reasons for rejecting it.  The court disagrees.

The ALJ considered the medical evidence as a whole and found it was equivocal regarding whether or not Plaintiff was properly diagnosed with PTSD.  Tr. 480.  The ALJ explained that Dr. Monkarsh's finding of an increase in PTSD symptoms was inconsistent with other evaluations, specifically Dr. Wittkopp's opinion.  Id.   The ALJ further explained her assessment of Dr. Monkarsh's opinion, stating:

> Little weight was given to a psychiatric examination performed by Dr. Monkarsh on September 24, 2002 (Exhibit 4F/138-40).  Dr. Monkarsh diagnosed the claimant with PTSD, chronic and severe; and a dysthymic disorder secondary to PTSD.  He noted an increase in the claimant's psychiatric symptoms.  He reported social, industrial and emotional impairment, but found the claimant capable of managing his own funds.  Dr. Monkarsh's observations do not reflect a longitudinal view of the claimant's treatment history.  Rather his findings are based on one examination in which he placed considerable reliance on the claimant's subjective complaints, rather than objective evidence.  While he may have observed a brief increase in symptoms, he did not consider the claimant's

REPORT AND RECOMMENDATION - 10

> overall positive response to treatment after that. His assessment fails to address the claimant's credibility issues, noncompliance with treatment and activities of daily living.

Tr. 487.

The undersigned finds the ALJ presented valid reasons for giving less weight to the opinion of Dr. Monkarsh. Just one month after Dr. Monkarsh's evaluation, Plaintiff reported to Dr. Matteucci that he "noted clear improvement assoc[iated] with increase with improved mood, decrease in irritability, anger" with medication. Tr. 278. Moreover, the ALJ may properly reject a doctor's opinion that is based on unreliable subjective complaints. Tonapetyan , v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

### B. Drs. Houck and Lewis

A psychiatric review technique form was completed by Trevelyn Houck, Ph.D., in mid-November 2003, and affirmed by Janis Lewis, Ph.D., on March 24, 2004. Drs. Houck and Lewis diagnosed plaintiff with a learning disorder and PTSD. Tr. 308, 312. They found plaintiff to be mildly restricted in his activities of daily living and to have moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. Tr. 317. There was insufficient evidence of episodes of decompensation. Id. At the same time, Dr. Houck and Dr. Lewis completed a mental residual functional capacity assessment form, in which they also found plaintiff to be moderately limited in his ability to: understand, remember and carry out detailed instructions; maintain attention and concentration; complete a normal workday and workweek, perform at a consistent pace; interact appropriately with the general public; and get along with co-workers or peers. Tr. 321-22. Lastly, Drs. Houck and Lewis commented that plaintiff could "complete semi-skilled and some skilled tasks" with "adequate attention to

complete" a workday and workweek, and that he would "do best with a few co-workers and limited public contact." Tr. 323.

When Judge Strombom evaluated the ALJ's initial decision, she concluded that the ALJ had failed to provide reasons for not adopting the psychologists' moderate limitations on completing a normal workday and workweek, performing at a consistent pace, and maintaining attention and concentration. The ALJ was therefore directed to reconsider the evidence. Plaintiff now argues the ALJ gave "great weight" to the opinions of Drs. Houck and Lewis, but found, without providing reasons, that Plaintiff could perform all "simple and detailed tasks," as opposed to "semiskilled and some skilled tasks" as Drs. Houck and Lewis opined.

The court first notes that Judge Strombom previously explained that she found no error with the ALJ's previous determination that "plaintiff was capable of performing simple and some detailed tasks not involving extensive social interaction, and that, in this sense, the ALJ did adopt most of the above two psychologists' limitations." Tr. 508. Judge Strombom explained:

> For example, a restriction to "some" detailed tasks is not inconsistent with a moderate limitation in that area. That is, nothing in the record indicates the ALJ's view that such a limitation reduces plaintiff's ability with respect to detailed tasks from "all" to only "some" is unreasonable. The same is true in regard to the restriction to no extensive social interaction and moderate limitations in the ability to get along with co-workers and peers and interact appropriately with the public.

Tr. 509.

The undersigned similarly finds no error in the ALJ's findings and reliance on Drs. Houck and Lewis' evaluations of Plaintiff's residual mental capacity. The ALJ found Plaintiff is capable of performing "simple and detailed tasks, which did not involve extensive social interaction." Tr. 482, finding 5. The difference between the ALJ's finding, which is inclusive, and "semi-skilled and some skilled tasks" and the ALJ's findings is insignificant. Plaintiff does

REPORT AND RECOMMENDATION - 12

not show that the jobs identified by the vocational expert, including his past work as a computer program analyst, required more than "semi-skilled and some skilled tasks." The ALJ specifically stated, "Ms. Burkett testified that the claimant's education and work experience satisfy the skill level of the application and computer program analyst job." Tr. 488. The ALJ properly evaluated Drs. Houck and Lewis opinion.

### C. Dr. Turco

Plaintiff was evaluated by Ronald Turco, M.D., in early July 2002. Dr. Turco found Plaintiff's thought processes and cognitive functioning to be normal, and noted that he was neither delusional nor psychotic. Tr. 151. Dr. Turco felt plaintiff was "currently depressed," and might have "some memory difficulties." Tr. 155. He diagnosed plaintiff with a major depressive disorder with post traumatic stress symptoms and stated Mr. Eash is not able to return to this job. Tr. 155-56.

Plaintiff previously asserted Dr. Turco did not believe plaintiff could adapt to competitive work. Judge Strombom rejected that argument based on the fact that the ALJ had found, based on the testimony for Gary Jesky, a vocational expert, that Plaintiff could not return to his past relevant work. On remand further evidence was reviewed and a different vocational expert testified that Plaintiff was capable of returning to his past work as a computer program analyst. Plaintiff now argues the ALJ failed to address Dr. Turco's opinion that he did not believe Plaintiff could return to his past relevant work.

The court is not persuaded by Plaintiff's argument. Plaintiff takes Dr. Turco's statements out of context. Dr. Turco was specifically referring to Plaintiff's restaurant job, not his job as a computer program analyst. Dr. Turco's opinion supports the ALJ's finding that Plaintiff is capable of employment in the computer industry. Dr. Turco stated:

REPORT AND RECOMMENDATION - 13

> In my opinion Mr. Eash is <u>not</u> capable of working at his job. He is not likely to be able to return to this job. He has demonstrated in the past an inability to adapt to jobs of responsibility where expectations are placed on him. This is unfortunate. He is currently seeking assistance through the Veteran Administration and likely this will relate to some form of retraining and/or pursuing further training with his computer skills.
>
> It is interesting to note that somehow he can continue with the computer skills and computer work and yet has difficulties associated with remembering issues in the work place. This in many respects is a contradiction in terms. However, his wish is to work in an office setting with computers possibly not having much involvement with other people.
>
> Please let me know if you have any questions regarding this report. In my opinion the prognosis for Mr. Eash's return to work with the Olive Garden Restaurants is poor and he is not likely to return to any job there.

Tr. 155.

Therefore, it appears that Dr. Turco's conclusion is not inconsistent with the ALJ's conclusion that Plaintiff is capable of performing some work function with computers.

### *IV. The ALJ Properly Considered Plaintiff's Residual Functional Capacity And Plaintiff's Ability To Perform His Past Work*

At step four, claimants have the burden of showing that they can no longer perform their past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir.1990). Once they have shown this, the burden at step five shifts to the Secretary to show that, taking into account a claimant's age, education, and vocational background, she can perform any substantial gainful work in the national economy. 20 C.F.R. §§ 404.1520(f) and 416.920(f). Moore v. Apfel, 216 F.3d 864, 869 (9th Cir.2000).

Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. SSR 82-62. See 20 C.F.R. §§ 404.1571 and 416.971, 404.1574 and 416.974, 404.1565 and 416.965. [Footnote omitted]

This is done by looking at the "residual functional capacity and the physical and mental demands" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e) The claimant must be able to perform:

1. The actual functional demands and job duties of a particular past relevant job; or

2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

SSR 82-61. This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. SSR 82- 62.

Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).

Here, the ALJ assessed plaintiff with the following residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 4004.1567(b). He was able to lift and carry 20 pounds occasionally and 10 pounds frequently. During an eight-hour workday he was able to stand or walk 6 hours and sit 6 hours. He was able to perform frequent bilateral handling. He was able to occasionally kneel, crouch, crawl, and climb (e.g., ramps, stairs, ladders, ropes and scaffolds). He needed to avoid concentrated exposure to noise and hazards (e.g., moving equipment, machinery and unprotected heights). He was able to perform simple and detailed tasks, which did not involve extensive social interaction. He would have performed best in a situation with few co-employees and limited public contact. He required easy access to a restroom.

Tr. 482.

Plaintiff argues the ALJ's decision was made in error because (1) the ALJ's above RFC finding does not include all of Plaintiff's limitations and (2) due to the fact that the RFC finding and hypothetical posed to the vocational expert did not accurately reflect Plaintiff's limitations, the ALJ failed to meet his step-five burden. Both arguments are premised on the Plaintiff's other arguments, i.e., the ALJ's alleged failure to properly assess the medical evidence and the ALJ's failure to accept the VA's disability determination. As discussed above, the undersigned found no errors in the ALJ's assessment of the medical evidence or her refusal to adopt the VA's disability determination as her own. Substantial evidence in the record, noted above, properly supports the ALJ's assessment of Plaintiff's RFC and the hypothetical posed to the vocational expert. Accordingly, the court does not find any merit to Plaintiff's contention that the ALJ erred at step-four or step-five of the administrative process.

REPORT AND RECOMMENDATION - 15

**CONCLUSION**

Based on the foregoing discussion, the Court should affirm the administrative decision. Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on July 10, 2009, as noted in the caption.

DATED this 5th day of June, 2009.

/s/ J. Richard Creatura

J. Richard Creatura
United States Magistrate Judge